UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| SHEENA BROOKS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) NO. 3:05-0715 |
| | ) JUDGE ECHOLS |
| THE FINISH LINE, INC. | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM

Pending before the Court is Defendant Finish Line Inc's ("Finish Line") "Motion to Dismiss and Compel Arbitration" (Docket Entry No. 13) to which Plaintiff Sheena Brooks ("Brooks") has responded in opposition (Docket Entry No. 18) and Defendant has replied (Docket Entry No. 20).

### I. FACTUAL BACKGROUND

In April of 2005, Brooks became employed at Finish Line's Opry Mills' store in Nashville, Tennessee. Brooks claims her manager, Gerald Smith, abused his position and engaged in verbal and physical sexual harassment directed at her. Brooks further alleges that on numerous occasions, she tried to get an area manager or the corporate office to intercede on her behalf, but those attempts proved futile. (Docket Entry No. 1 ¶¶ 4-22).

Because efforts to resolve the situation were unsuccessful, Plaintiff left her employment. Defendant viewed this as job abandonment and terminated her employment on June 27, 2005. (Johnson Decl. ¶ 8). Plaintiff then filed suit in this Court

1

alleging Defendant is liable under the Tennessee Human Rights Act ("THRA") and for "outrageous conduct."  (Docket Entry No. 1 ¶ 23).

Defendant moves to dismiss this case and compel arbitration on the basis of Finish Line's "Dispute Resolution Plan" ("Plan"). Under the Plan, employees agree to arbitrate claims they may have against Finish Line, except those relating to worker's compensation and unemployment compensation benefits.  (Johnson Decl., Ex. A).

In seeking employment with Finish Line, Brooks filled out and executed an application.  At the end of the application, the following language appears:

> I agree that I will settle any and all previously unasserted claims, disputes or controversies arising out of or relating to my application or candidacy for employment and/or cessation of employment with The Finish Line, Inc., exclusively by final and binding arbitration before a neutral arbitrator. By way of example only, such claims include claims under federal, state, and local statutory or common law, such as the Age Discrimination in Employment Act, Title VII of the Civil Rights Act of 1964, as amended, including the amendments of the Civil Rights Act of 1991, the Americans with Disabilities Act, the law of contract, and the law of tort. Complete details of my agreement to submit these claims to arbitration are contained in The Finish Line, Inc. Employee Dispute Resolution Plan which has been made available for my review prior to the execution of this application.
>
> I have read and understand the foregoing . . . paragraphs and have voluntarily agreed to them.

(Johnson Decl., Ex. B).

Even though the above paragraphs appear directly above Brooks' signature, she claims she did not read those paragraphs, nor did anyone explain those paragraphs to her.  (Brooks Decl. ¶ 1).  She also claims that the Plan was not made available to her prior to

2

signing the application, nor did she ever see the Plan during her employment.  (Id.).

With regard to modifications, the Plan provided that it could "be amended by the Company at any time" but that "no amendment shall apply to a dispute of which the Company had actual notice on the date of the amendment."  (Johnson Decl., Ex. A ¶ 15).  The Plan also provides it could "be terminated by the Company at any time upon 60 days notice to Employees" but that "such termination, . . . shall not be effective as to any disputes that arose prior to the date of such termination."  (Id. ¶ 15).

## II.  APPLICATION OF LAW

As indicated at the outset, Defendant has moved to dismiss and compel arbitration and Plaintiff has objected to the same.  After considering Plaintiff's arguments against enforcing the arbitration agreement as set forth in the Plan, the Court will address the feasibility of dismissing this case as opposed to staying this case pending arbitration.

### A. Plaintiff's Arguments Against Arbitration

There is a strong presumption in favor of arbitration under the Federal Arbitration Act ("FAA"). Nguyen v. City of Cleveland, 312 F.3d 243, 244 (6th Cir. 2002). "The Sixth Circuit has repeatedly applied the FAA to arbitration agreements formed in the employment setting."  Walker v. Ryan's Family Steak Houses, Inc., 400 F.3d 370, 378 (6th Cir. 2005).  However, "[t]he presumption in favor of arbitration . . . disappears when the parties dispute the existence

3

of a valid arbitration agreement." Dumais v. American Golf Corp., 299 F.3d 1216, 1219 (10th Cir. 2002).

In this case, Plaintiff does not dispute the general presumption in favor of arbitration. She claims, however, that the present arbitration agreement is unenforceable because it (a) totally waives Plaintiff's rights; (b) is illusory; (c) is unconscionable as an adhesion contract; and (d) is too burdensome. Each of those arguments will be considered in turn.

### 1. Waiver of Substantive Rights

Plaintiff first claims the arbitration agreement waives her substantive rights under Tennessee law. That is, because the Plan provides that the arbitration "shall be governed by Indiana law," the Plan "prospectively waives all Tennesseans' rights to the Tennessee Human Rights Act" and is therefore "*per se* unenforceable." (Docket Entry No. 18 at 3). This Court disagrees.

As Plaintiff recognizes, claims subject to arbitration agreements are "enforceable pursuant to the FAA because the agreement only determines the choice of *forum*." EEOC v. Waffle House, Inc., 534 U.S. 275, 279 n.10 (2002)(emphasis added). To be valid, "the choice to arbitrate statutory claims will change only the forum of decision and not the substantive protections afforded by the statutes in question." Morrison v. Circuit City Stores, Inc., 317 F.3d 646, 653 (6th Cir. 2003). Hence, "[b]y agreeing to arbitrate a statutory claim, a party does not forgo the substantive right afforded by the statute; it only submits their resolution to

4

an arbitral, rather than a judicial, forum." Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 628 (1985).

The Plan in this case does not deprive Plaintiff of her substantive claim. The "Applicable Forum and Law" section of the Plan provides:

> These proceedings and any judicial review of awards under these rules shall be governed by the Act [FAA]. Any challenge to the enforceability of this Plan or an arbitrator's award shall be filed in a federal court in the Southern District of Indiana, Indianapolis Division, or in a state court situated in Marion County, Indiana. If a court of competent jurisdiction determines that the Act [FAA] is inapplicable, however, these proceedings and any judicial review of awards under these rules shall be governed by Indiana law. Other than as expressly provided herein, the Plan shall not be construed to grant additional substantive legal or contractual rights, remedies or defenses that would not be applied by a court of competent jurisdiction in the absence of the Plan.

(Johnson Decl., Ex. A ¶ 4). The Plan further provides:

> Except where otherwise expressly provided in the Plan, the Arbitrator shall apply the substantive law or law which would be applied by the United States District Court for the Southern District of Indiana - Indianapolis Division. The Arbitrator is without jurisdiction to apply any different substantive law. The Federal Rules of Evidence shall apply to the conduct of the hearing[.]

(Id. ¶ 10(b)).

Contrary to Plaintiff's suggestion, the foregoing passages do not state that Plaintiff's claims are subject to the substantive law of Indiana. Instead, the provisions clearly provide that (1) the FAA governs the proceedings, (2) the Arbitrator is to apply the law as would be applied by the United States District Court for the Southern District of Indiana, and (3) only in the event the FAA does not apply are the *proceedings* to be governed by Indiana law.

5

With regard to substantive law, the Southern District of Indiana would look to Indiana's choice of law principles. "Arbitration arises through contract," Bopp v. Brames, 677 N.E.2d 629, 632 (Ind. App. 1997), and "Indiana's choice of law rule for contractual disputes requires [the court] to apply the law of the forum with the most intimate contacts to the facts." OVRS Acquisition Corp. v. Community Health Serv., Inc., 657 N.E.2d 117, 125 (Ind. App. 1995).

In this case, Plaintiff is a resident of Tennessee, she was employed at a Finish Line store in Tennessee, the Application for Employment was signed in Tennessee, the alleged incidents giving rise to her claims are based on violations of Tennessee law, and it would appear that most witnesses would be located in Tennessee. If the United States District Court for the Southern District of Indiana were to consider the matter, it likely would apply the substantive law of Tennessee, which includes claims under the THRA,[1] although there may be other factors not now considered by this Court. Therefore, in agreeing to arbitrate her claims, Plaintiff does not automatically forego a claim under the THRA or other substantive Tennessee law.

2.  **Illusory Contract**

---

[1] Moreover, the THRA is akin to Tile VII such that "analysis of claims under the THRA is the same as under Title VII." Gee-Thomas v. Cingular Wireless, 324 F.Supp.2d 875, 881 (M.D. Tenn. 2004). There is no suggestion that an arbitrator in Indiana would be any less capable of analyzing a Title VII claim than a Tennessee arbitrator.

6

"An arbitration agreement allowing one party the unfettered right to alter the arbitration agreement's existence is illusory." Dumais, 299 F.3d at 1219. Plaintiff claims that the Plan is illusory because it may be amended by the Company at any time and terminated upon sixty days notice to the employees. In support of her position, Brooks primarily relies on Floss v. Ryan's Family Steak Houses, Inc., 211 F.3d 306 (6th Cir. 2000).

In Floss, the arbitration agreement was between an arbitration service provider and several employees of a restaurant who had agreed, with the arbitration service provider directly, to submit any employment disputes with their employer to the arbitration service provider. The Sixth Circuit held the arbitration agreement could not be enforced because the arbitration service provider's promise to provide an arbitration service was "fatally indefinite," in that the provider "reserved the right to alter the applicable rules and procedures without any obligation to notify, much less receive consent from," the employees. Id. at 315-16. Quoting Professor Williston, the Sixth Circuit wrote:

> Where a promisor retains an unlimited right to decide later the nature or extent of his performance, the promise is too indefinite for legal enforcement. The unlimited choice in effect destroys the promise and makes it merely illusory.

Id. at 316 (citation omitted). Because the arbitration agreement lacked a mutuality of obligation in light of the possibility of unilateral change, there was no consideration. Id.

However, Floss may not be applicable to the circumstances of this case. As the Sixth Circuit has observed,

7

> The arbitration agreement at issue in Floss was between an employee and a provider of dispute resolution services, not between the employee and his employer. See Floss, 211 F.3d at 309. The dispute resolution firm obligated itself only to provide an arbitral forum, not to submit its own disputes to arbitration. It was that obligation that was rendered illusory by the firm's unfettered right to choose the nature of the forum. See id. at 309-10, 315-16. Floss, in our view, is not controlling here.

Howell v. Rivergate Toyota, Inc., 144 Fed.Appx. 475, 480 (6th Cir. 2005). However, even assuming Floss is applicable, it is readily distinguishable.

Contrary to the third-party arbitration service's apparently unfettered ability to amend in Floss, Finish Line's ability to amend the Plan is not unlimited. Instead the Plan specifically states that "no amendment shall apply to a dispute of which the Company had actual notice on the date of the amendment." The danger apparently envisioned by the Sixth Circuit in Floss – that the company could unilaterally change its obligations in order to defeat claims – is not present in this case.

Additionally, and apparently unlike the third-party service in Floss, Finish Line has evidenced an intention to be bound by the Plan as written, or something similar to it. At the top of the Plan, immediately under the title, the Plan states that it is an "agreement by both the Employee and the Company to be bound by this Plan." (Johnson Decl. Ex. A). See, Howell, 144 Fed. Appx. at 479 (the employer's "duty of good faith and fair dealing prohibits it from amending the [Plan] for an improper or oppressive purpose" because under Tennessee law "every party to a contract is bound by an implied duty of good faith and fair dealing").

8
Case 3:05-cv-00715   Document 21   Filed 04/26/06   Page 8 of 15 PageID #: 119

True, the Plan indicates that it can be terminated by Finish Line, but that can only be done on sixty days notice and would not apply to any pending claims. This provision does not make the Plan unenforceable. See, Morrison v. Circuit City Stores, Inc., 317 F.3d 646, 668 (6th Cir. 2003)("[u]nlike in Floss, in this case [the employer] had the authority to alter the agreement on only one day of each year and had to provide its employees with thirty days' notice before doing so").

Given the foregoing, the Court finds that the Plan in this case is not illusory.[2] Accordingly, Defendant's motion to compel arbitration will not be denied on this basis.

### 3. Adhesion Contract

Plaintiff next claims the Plan amounts to a contract of adhesion because (1) new employees had to agree to the Plan to be hired; (2) the application only referenced the Plan; and (3) the Plan was not made available to Plaintiff at the time she signed her Application for employment. Plaintiff relies exclusively on Walker v. Ryan's Family Steak Houses, Inc., 289 F.Supp.2d 916, 932 (M.D. Tenn. 2003) in which Judge Trauger found a third party arbitration agreement unenforceable because "[i]t is provided to potential employees on a 'take it or leave it basis'; if they do not sign,

---

[2]Even if the Plan were deemed illusory, this does not mean that it could not be enforced. "If a contract or term thereof is unconscionable at the time the contract is made, a court may refuse to enforce the contract, or may enforce the remainder of the contract without the unconscionable term." Taylor v. Butler, 142 S.W.3d 277, 285 (Tenn. 2004). In this case, there is no need to sever the clauses relating to amendment or termination since the Plan is exactly the same as it was when Brooks signed her application.

they are not considered for employment, and they are not permitted to modify any portion of the Agreement or the Rules."

While the decision in Walker favors Plaintiff's position, its continued validity is in doubt given the Sixth Circuit's extended discussion of adhesion contracts under Tennessee law in Cooper v. MRM Investment Co., 367 F.3d 493 (6th Cir. 2004). There, the trial court found the arbitration agreement to be a contract of adhesion because it was offered on a "take it or leave it basis." In reversing the trial court, the Sixth Circuit wrote "[a] contract is not adhesive merely because it is a standardized form offered on a take-it-or-leave-it basis." Id. at 500. Instead, it is incumbent upon an employee challenging the agreement as being an adhesion contract to show that she "would be unable to find suitable employment if she refused to sign [the arbitration] agreement." Id.

Plaintiff makes no such showing in this case. There is nothing which would suggest that Plaintiff could not have found employment elsewhere. As such, the Plan does not amount to a contract of adhesion.

Plaintiff also asserts that the Plan is an adhesion contract because it was not a part of the application she signed and its language regarding the Indiana venue for arbitration was only contained in the Plan itself. However, the fact that the arbitration agreement was set out in a separate document titled "The Finish Line Employee Dispute Resolution Plan" and not buried in the application actually supports the notion that it was not a contract of adhesion. Id., at 501 n.2 ("The case for enforcing the

agreement is strengthened by the fact that it is brief and embodied in a separate document").

In any event, Plaintiff cannot avoid abiding by the Plan by asserting she did not read the paragraph referencing the Plan, or claiming the Plan was not available to her prior to her signing the application. In Giles v. Allstate Ins. Co., 871 S.W.2d 154 (Tenn. Ct. App. 1993) the Tennessee Court of Appeals observed:

> "To permit a party, when sued on a written contract, to admit that he signed it but to deny that it expresses the agreement he made or to allow him to admit that he signed it but did not read it or know its stipulations would absolutely destroy the value of all contracts." . . . "In this connection it has been said that one is under a duty to learn the contents of a written contract before he signs it, and that if, without being the victim of fraud, he fails to read the contract or otherwise to learn its contents, he signs the same at his peril, and is estopped to deny his obligation, will be conclusively presumed to know the contents of the contract, and must suffer the consequences of his own negligence."
> "It will not do, for a man to enter into a contract, and, when called upon to respond to its obligations, to say that he did not read it when he signed it, or did not know what it contained. If this were permitted, contracts would not be worth the paper on which they are written. But such is not the law."

Id. at 157; see also, Chapman v. H & R Block Mortgage Co., 2005 WL 3159774 at *5 (Tenn. Ct. App. 2005)("Any assertion by [plaintiff] that she did not read the loan documents before signing them does not, in any event, absolve her from complying with the matters agreed to or justify a conclusion that her agreement, including the agreement to submit to arbitration was made unknowingly"). In this case, Plaintiff specifically acknowledged, in signing her Application, both the existence of the Plan and its availability to her.

Given the foregoing, the Court finds the Plan was not an adhesion contract under Tennessee law. Therefore, the motion to dismiss will not be denied on this ground.

**4. Unduly Burdensome Contract**

Finally, Plaintiff asserts that "it is patently unreasonable to require low wage earning Tennesseans who work at Finish Line selling sneakers to foot a bill of an arbitrator and an arbitration conducted in Indianapolis." (Docket Entry No. 18 at 7). While this Court agrees that the cost provisions are unreasonable, the Plan will not be held unconscionable on that basis. Instead, the offending paragraph will be severed from the Plan.

With regard to cost splitting provisions, the decision of the Sixth Circuit in Morrison, supra, is instructive. In that case, the agreement provided that an employee could avoid paying half of the costs of arbitration if she could arrange to pay the greater of $500 or three percent of her annual salary (which was $54,060). In rejecting the employer's argument that three percent of her salary ($1,622) was not prohibitive, the Sixth Circuit wrote:

> In the abstract, this sum may not appear prohibitive, but it must be considered from the vantage point of the potential litigant in a case such as this. Recently terminated, the potential litigant must continue to pay for housing, utilities, transportation, food, and the other necessities of life in contemporary society despite losing her primary, and most likely only, source of income. Unless she is exceedingly fortunate, the potential litigant will experience at least a brief period of unemployment. Turning to the arbitration agreement with her employer, the potential litigant finds that, as the default rule, she will be obligated to pay half the costs of any arbitration which she initiates.
> Minimal research will reveal that the potential costs of arbitrating the dispute easily reach thousands, if not tens of thousands, of dollars, far exceeding the costs that a plaintiff would incur in court. Courts charge plaintiffs initial filing fees, but they do not charge extra for in-person hearings, discovery requests,

>routine motions, or written decisions, costs that are all
>common in the world of private arbitrators.

Morrison, 317 F.3d at 669.

In this case, the potential costs are more prohibitive than in Morrison. Under the Plan, an employee can be liable for the greater of $10,000 or 10% of the amount in controversy, unless the Arbitrator decides "to further reduce the Employee's share of the costs and fees upon a showing of substantial need." (Johnson Decl., Ex. A ¶ 13(A)). The prospect of paying up to $10,000 (in addition to having to arbitrate in Indianapolis) is undoubtedly a deterrent for a pregnant single mother of three who (1) earned $7.50 per hour at Finish Line; (2) makes $12.00 an hour as a prep cook; (3) lives in government subsidized housing; and (4) spends approximately $1,200 a month on normal monthly bills for such things as rent, insurance, car payments, clothing, food, and day care. (Brooks Aff. ¶¶ 3-4). Given these facts, the Court finds that Plaintiff "has satisfied her burden in the present case in demonstrating that the cost-splitting arrangement in the [Plan] would deter a substantial number of similarly situated persons from attempting to vindicate their statutory rights in the arbitral forum[.]" Morrison, 317 F.3d at 670.

Having determined that the cost-splitting provision is unenforceable, the question becomes whether, under state law, the provision is severable from the Plan or requires that the entire agreement be deemed unenforceable. Id. at 674. The Plan contains a severability clause which provides:

>The terms of this Plan are severable. The invalidity or
>unenforceability of any provision herein shall not affect
>the application of any other provision.

(Johnson Decl., Ex. A ¶ 17). Because the Plan contains such a provision, it is proper for the Court to simply excise from the Plan the provision relating to cost-splitting. See, Chapman, 2005 WL 3159774 at *4 ("In the event that a provision of an arbitration agreement is found to be invalid, that provision may be deleted from the agreement, and otherwise the agreement may be given full effect consistent with the general policy of favoring the enforcement of arbitration agreements"). Accordingly, the language relating to the employee's share of costs and fees of the arbitrator and arbitration and the depositing of those moneys as found in paragraphs 13(A) and (B) of the Plan will be severed.

**B. Motion to Dismiss Versus Stay Pending Arbitration**

Defendant has moved to dismiss these proceedings and compel arbitration. The Court finds that the proper course is to stay these proceedings pending arbitration.

When an issue in the proceedings is subject to arbitration under the FAA, the statute provides that a trial court "shall on application of one of the parties stay the trial of the action until such arbitration has been held[.]" 9 U.S.C. § 3. While some courts have chosen to dismiss the action in favor of arbitration, particularly where all of the issues in the case are arbitrable, see, e.g., Lewis Tree Serv., Inc. v. Lucent Tech., Inc., 239 F.Supp.2d 332, 340 (S.D.N.Y. 2002); Reynolds v. Halliburton, 217 F.Supp.2d 756, 758 (E.D. Tex. 2002), others have indicated that the statute is mandatory and bespeaks of no exceptions: if any or all claims are arbitrable, the case must be stayed. Lloyd v. Hovensa, LLC, 369 F.3d 263 (3d Cir. 2004).

For its part, the Sixth Circuit has noted that there exists authority to dismiss the case where all claims are subject to arbitration, Green v. Ameritech Corp., 200 F.3d 967, 973 (6th Cir. 2000), but has not indicated that this is either the required, or even preferred route. Since the statute states that the case *shall* be stayed and since there exists the possibility that the parties to the arbitration could conceivably seek assistance from the Court during the arbitration proceedings, Lloyd, 369 F.3d at 270,[3] the Court will stay these proceedings pending arbitration.

### III. CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss and Compel Arbitration, construed as a motion to stay pending arbitration, will be granted. The parties will be ordered to pursue arbitration in accordance with the Plan. However, the clauses relating to the employee's responsibility for the fees and costs of the arbitrator and arbitration will be severed from the Plan. Pending resolution of the arbitration proceedings, this case will be administratively closed.

An appropriate Order will be entered.

_____
ROBERT L. ECHOLS
UNITED STATES DISTRICT JUDGE

---

[3] As pointed out by the court in Lloyd, a party directed to arbitrate a claim may still seek assistance from the trial court for such things as disputes regarding the appointment of the arbitrator, to compel the attendance of witnesses, to punish for contempt, or to seek relief in the form of a judgment. Id. "If the plaintiff's case has been dismissed rather than stayed, the parties will have to file a new action each time the Court's assistance is required[.]" Id. Dismissing the action in lieu of staying the proceedings can lead to unnecessary procedural complexity, such as that presented in Green.